LARRY STEVEN NACOFF *v*. STATE OF INDIANA.

[No. 269S37. Filed March 5, 1971.]

*Henry P. Schrenker,* of Anderson, for appellant.

*Theodore L. Sendak,* Attorney General, *Murray West,* Deputy Attorney General, for appellee.

DEBRULER, J.—This is an appeal from a conviction for inflicting injury during a robbery in violation of I.C. 1971, 35-13-5-6, being Burns § 10-1401. Trial was by jury in the Madison Circuit Court and appellant was sentenced to life imprisonment.

Appellant's first contention on appeal is that the trial court erred in admitting in evidence State's Ex. "A", a statement of appellant, because there was no showing that appellant freely and intelligently waived his constitutional right to remain silent.

Appellant was charged with robbing a gas station attendant on December 1, 1967, and while engaged in that robbery of inflicting stab wounds on the attendant. Appellant was arrested in Marion County on January 28, 1968, in the early morning hours, as a suspect in connection with a robbery that had occurred the night before. Appellant was taken to a state police post where he was read the standard state police advisement of his rights and appellant signed the waiver form. However, no statement was obtained from appellant at that time.

At 8:30 a.m. on January 28, the appellant was taken to the Madison County jail and placed in a special cell in the basement called "the boards". This cell was 6' by 3', with a commode and a wash basin with only cold water. Appellant was alone and never allowed out of this cell except to be questioned. He was fed in that cell and had no shower facilities, warm water, and no mattress for the first one and a half days. The sheriff testified that it was very unusual to permit a mattress in that cell. This was obviously a cell used for punishing disobedient prisoners or temporarily confining berserk arrestees.

On January 28, at 10:00 a.m. Detective Hart of the state police questioned appellant twice after he had been placed in the Madison County jail. At this time appellant was under arrest without warrant for a robbery committed on January 27. Hart testified concerning the advisement of rights he gave appellant prior to questioning him and for purposes of this case we assume it was adequate. According to Hart he told appellant that the victim of the December 1 crime had identified him and that appellant would feel better if he cleared them both up. Hart told appellant he would pass along to the prosecuting attorney any information that appellant had cooperated with the authorities. Hart knew appellant had been an inmate at Logansport State Hospital several times and that appellant had been released from Logansport on the 27th. He told appellant he would help him get psychiatric help for appellant. Hart said he did not promise appellant any immunity. Appellant denied having anything to do with the crime and did not give Hart any statement.

The sheriff testified that he talked to appellant at least a couple of times in the next few days. At 12:30 a.m. on February 2, appellant signed the statement which was admitted at trial as State's Ex. "A". Just prior to appellant giving the statement the deputy sheriff taking the statement read to appellant a full and adequate advisement of his rights and a waiver printed at the top of the sheet on which appellant's statement was typed. Appellant then signed that statement.

Since the advisement of rights was adequate, the only issue is whether appellant intelligently and voluntarily waived his rights and made the statement. *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694.

A heavy burden rests on the appellee to demonstrate that the appellant intelligently and voluntarily waived his right to remain silent and to consult with appointed counsel. *Miranda* v. *Arizona, supra.* The legal standard to be applied in determining whether an accused, who has been properly advised of his rights and has signed a waiver, has voluntarily waived his rights is the same as that used in the

pre-*Miranda* coerced confession cases. The question is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises, or other improper influence. *Brady* v. *U. S.* (1970), 397 U. S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747; *Haynes* v. *Washington* (1963), 373 U. S. 503, 83 S. Ct. 1336, 10 L. Ed. 2d 513; *Rogers v. Richmond* (1961), 365 U. S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760; *Bram* v. *U. S.* (1897), 168 U. S. 532, 18 S. Ct. 183, 42 L. Ed. 568; *Hall* v. *State,* 255 Ind. 606, 266 N. E. 2d 16; *Smith* v. *State* (1969), 252 Ind. 425, 249 N. E. 2d 493; *Sparks* v. *State* (1967), 248 Ind. 429, 229 N. E. 2d 642.

We hold that the record clearly shows that the State did not carry its burden of showing that the appellant intelligently and voluntarily waived his right to remain silent and to consult with counsel. The evidence which shows this is as follows:

(1) Appellant was twenty-three years old, had never completed his second year of high school, and had been committed to a mental hospital several times. This latter fact was known to the police. Appellant was confined in a 6' by 3' cell without warm water or shower facilities for four and a half days; he left his cell only to be interrogated. Immediately upon confessing appellant was transferred to a cell block of his own choosing and allowed to shower.

(2) Shortly after being placed in the cell appellant was questioned by a state police detective who told appellant that he had been identified in the *robbery* on December 1, 1967; he was under arrest for a robbery on January 27, 1968; the detective would pass on any information to the prosecutor that appellant had cooperated; the detective would help him get psychiatric help. Appellant denied any knowledge of the crime.

(3) Appellant was held absolutely incommunicado for four and a half days prior to his giving the statement. Appellant was not taken promptly before a magistrate as required by law. I.C. 1971, 35-1-7-1; 35-1-8-1; 35-4-1-1; 9-4-1-130; 18-1-11-8; 18-4-12-16, being Burns §§ 9-701; 9-704; 9-704(a); 47-

2307; 48-6112; 48-9416; *Pearman* v. *State* (1954), 233 Ind. 111, 117 N. E. 2d 362.

In *Miranda* v. *Arizona, supra,* the United States Supreme Court said:

> "Whatever the testimony of the authorities as to waiver of rights by an accused, the fact of lengthy interrogation or incommunicado incarceration before a statement is made is strong evidence that the accused did not validly waive his rights."

This Court has held in the past that the fact that the statement was obtained during this period of illegal detention ■ may be considered on the issue of the admissibility of the statement. *Krauss* v. *State* (1951), 229 Ind. 625, 100 N. E. 2d 824.

The purpose of this hearing before a magistrate is fourfold: (1) Advise the arrestee of the charges against him; (2) Advise the arrestee of his constitutional rights; (3) Provide ■ arrestee with an attorney if arrestee was without funds to hire one; (4) Determine whether there is sufficient evidence that the crime charged has been committed and that the accused committed it. *Fulks* v. *State* (1970), 255 Ind. 81, 262 N. E. 2d 651, (DeBruler, dissenting).

If the sheriff had complied with the law, appellant would not have been held incommunicado for four and a half days under the conditions described here. Appellant would ■ have had counsel right away who could have explained to him at length and in detail what charges were pending against him, the penalities for those crimes, how many charges there were, etc. Counsel could have explained to appellant that the charge for the December 1 crime might be for inflicting physical injury during a robbery carrying a life sentence, rather than simple robbery carrying a sentence of ten to twenty-five years. Counsel could have explained how appellant's confession on the December 1 crime would relate to the January 27 crime and what "cleaning them up" meant. Finally, counsel could have explained to appellant just what

kind of psychiatric help he was going to get by confessing to inflicting injury during robbery.

This case is controlled by the recent case of *Hall* v. *State, supra.* There appellant contended his confession was not voluntary because he was intimidated into signing a confession in that the police told him his wife was a prime suspect in the burglaries along with appellant. In reversing, this Court stated:

". . . there was a clear implication if he did not confess, she would be charged, which would necessitate the placing of appellant's small children in the custody of others. We do not doubt that the police officers were fully justified in believing that appellant's wife was in fact a prime suspect in the burglaries nor is there any doubt had she been charged appellant's children would by necessity have been cared for by persons other than appellant's wife. There is nothing in this record to indicate the confession made by the appellant was untrue. However, the truth of the situation is not the governing criteria in making the determination as to whether or not the appellant's confession was given freely and voluntarily after being fully apprized of all the facts and circumstances.

\* \* \*

"Even if we assume appellant's statement is in fact true and even though appellant's wife was a suspect and might well have been charged and convicted, when the threat to so charge and attempt to convict is made by police officers to 'encourage' the appellant to make a full confession, we cannot say as a matter of law that that confession is given freely and voluntarily by the appellant. The cause is, therefore, reversed with instruction to grant appellant's motion for new trial."

See also *Mims* v. *State* (1970), 255 Ind. 37, 262 N. E. 2d 638.

The degree of coercion in this case is at least as great as that in the *Hall* case.

Judgment reversed and new trial granted.

Arterburn, C.J., concurs with separate opinion; Hunter and Prentice, JJ., concur; Givan, J., concurs in result.

## Concurring Opinion

Arterburn, C.J.—I reluctantly concur in the result in this opinion for the reason that I think it and *Hall* v. *State* (February 1, 1971) 255 Ind. 606, 266 N. E. 2d 16, come very close to violating the general principal of appellate procedure that an appellate court should not weigh the evidence nor consider the credibility of the witnesses where there is a finding of fact supported by substantial evidence by the trial court. In other words, we should not substitute our personal views as to how we would have decided the facts in the trial court where there is conflicting evidence and the trial court heard the witnesses and considered the evidence. It is only where the evidence is without conflict that we may consider it a legal question on appeal.

This principle applies to all hearings in the trial court with reference to a determination of the facts—not only the facts as to the merits of the case on trial, but also hearings as to the competency of witnesses, admissibility of evidence, or hearings on probable cause for the issuance of warrants.

> "The trial court's denial of a motion to suppress evidence is presumably justified, and only the evidence tending to support the ruling will be considered, although the facts set forth in the motion must be accepted as true unless controverted; on the other hand, if evidence has been suppressed and a search warrant quashed, the presumption is, in the absence of a contrary showing by the state, that the search was illegal."

9 I.L.E., *Criminal Law,* Sec. 715, p. 212.

We have no reason to consider the "burden of proof" in this opinion. That matter solely concerns the trier of the facts.

I recognize that the United States Supreme Court at times has not followed this well settled principle of appellate review. The members of that Court frequently like to substitute their own personal opinions as to what the evidence proves, rather than to accept that of the trial court or lower court. I shall not knowingly violate that principle.

In these two cases I concur because I conceive the evidence as being undisputed and without conflict that the alleged con-

fessions were obtained by coercion or threats. If there was substantial evidence denying that fact, then I would have to follow the trial court's decision.

In these times, when there is a continual erosion of the public's right to protection against crime by enlarging the criminal's rights under the Constitution, rather than the law-abiding citizen's rights thereunder, I feel we should at least keep in mind the age-old principle of appellate review—that we do not substitute our personal opinions on the facts for those of the trial court.

NOTE.—Reported in 267 N. E. 2d 165.