DONALD LEE KORN *v.* STATE OF INDIANA.

[No. 876S273. Filed August 14, 1978.]

Michael J. McDaniel, of New Albany, for appellant.

Theodore L. Sendak, Attorney General, Daniel Lee Pflum, Deputy Attorney General, for appellee.

PIVARNIK, J.—Following a jury trial in the Clark Circuit Court on April 21, 1976, appellant Korn was convicted of inflicting injury in the commission of a robbery, commission of a crime while armed, to-wit, rape, and commission of a crime while armed, to-wit, robbery. For these crimes, Korn was sentenced to life, thirty years, and twenty years imprisonment, respectively.

The incident in question occurred on January 24, 1975. On this date, the appellant broke into the home of a woman, D.H., and slashed her throat five times. He then ordered her into a utility room where he raped her twice and forced her to commit sodomy. Korn then fled the home taking the victim's purse containing fifteen dollars. The victim later identified Korn as her assailant at a police line-up and at trial. Also, Korn gave the police a statement in which he admitted committing the acts in question.

This appeal presents four issues for our review. These issues concern: (1) the validity of the charging information; (2) the admission into evidence of appellant's confession; (3) the admission into evidence of the victim's purse which was located as a result of Korn's confession, and; (4) the trial court's denial of appellant's Motions for Directed Verdict made at the end of the state's case-in-chief and at the close of all evidence.

## I.

As his first assignment of error, the appellant claims that the trial court was without jurisdiction over this case because the charging information was not signed by the prosecutor in compliance with Ind. Code § 35-3.1-1-2(b) (Burns 1975). The relevant portion of this statute requires that:

> "The information shall be signed by the prosecuting attorney or his deputy and sworn to by him or by any other person."

The copy of the information contained in the record bears two signatures by the deputy prosecutor. The first signature was made in attestation to the oath of the affiant, Ronald Kemp. The second signature, follows the phrase "Approved by me." As the signatural requirements of the statute were complied with, there is no error presented in this issue.

## II.

The appellant next argues that the trial court erred in denying his Motion to Suppress a statement he gave to police. Korn claims that the confession was not freely, knowingly, and voluntarily given, and that it was obtained by police unlawfully.

The relevant facts surrounding the giving of the statement are as follows. Korn was taken into custody on the afternoon of January 27, 1975, pursuant to a preliminary charge of assault and battery with intent to commit a felony on one K.A. The next day Korn was taken before the Jeffersonville City Court in relation to the preliminary charge. City court judge, George Jacob, advised Korn of his constitutional rights including the right to an attorney. Judge Jacob further advised appellant that once formal charges were filed, either in the circuit court as a felony or in the city court as a misdemeanor, he could request that the presiding judge appoint the public defender to represent him if he could not afford a private attorney.

On the evening of January 29, 1975, the appellant was arrested in his jail cell pursuant to a bench warrant issued by the Clark Circuit Court for the rape, robbery and injury inflicted upon D.H., the victim in the present case. Korn was allowed to call his family that night and requested their presence at the jail. He also asked to see Larry White, an old family friend and retired police officer.

Larry White and Korn's wife, mother and sister left their Ohio homes the morning of January 30, 1975, arriving in Jeffersonville at around 11:30 a.m. Before going to the jail, the family retained a local attorney who said he would meet them at the police station. The family then proceeded to the jail where they met with Detective Ron Kemp and Major Bohlen, an Ohio policeman, at approximately noon. At this point the testimony conflicts. The family and Mr. White claimed that the police told them that they could not see Korn since they had hired a lawyer. The officers stated that what they actually told the family was that the police, not the family, would be unable to speak with Korn after an attorney was retained. The officers further testified that the family and White did, in fact, meet with the appellant from approximately 12:30 p.m. to 2:00 p.m. Following this meeting, the family went out for lunch after unsuccessfully trying to locate the attorney. Upon his arrival at the jail at 4:00 p.m., the attorney was notified of his discharge. The attorney counselled the family for fifteen minutes then left. The family and Mr. White then met with Korn before returning to Ohio at about 5:30 p.m.

After finishing dinner, Korn executed a written advice and waiver of rights form. At approximately 8:00 p.m., the appellant told Detective Kemp that he recalled what he had done in Ohio and in Jeffersonville. The appellant became very emotional at that point. Detective Kemp left the room to get Korn a cup of coffee and related the appellant's remarks to Major Bohlen, an Ohio police officer. Major Bohlen then

entered the room and advised appellant of his rights. Korn signed a written waiver form and proceeded to give Bohlen a statement concerning his involvement in an Ohio homicide. This statement was concluded at approximately 9:30 p.m. Detective Kemp returned to the room and Korn was again advised of his rights. The appellant executed a third waiver of rights form and made the confession which is at issue in this appeal.

The appellant admits that he was fully advised of his rights. He could hardly contend otherwise in light of the fact that in addition to the three written waivers he signed, he was also advised of his rights at the time of his initial arrest, at the subsequent booking, at the preliminary hearing, upon his arrest for the offenses against D.H. and by Detective Kemp when Kemp visited Korn's cell on the night of January 29. Rather, the essence of Korn's argument is that his confession was involuntary because: his will to resist questioning deteriorated due to the lapse of time between his initial arrest and the giving of the confession, and; because his right to counsel was frustrated by the actions of the police officers.

This court has held in several decisions that a delay in presenting a defendant before a magistrate does not make a confession inadmissible as a matter of law, but rather is one factor to be considered in the question of admissibility. *Murphy* v. *State*, (1977) 267 Ind. 184, 369 N.E.2d 411, 415; *Sanders* v. *State*, (1972) 259 Ind. 43, 284 N.E.2d 751; *Green* v. *State*, (1971) 257 Ind. 244, 274 N.E.2d 267. In the present case, the period of delay extended from the time of appellant's arrest in his jail cell on January 29, until his confession the following night; a period of approximately twenty-four hours. Although appellant was initially arrested on January 27, he was promptly brought before a judge on the preliminary charges the next day. Thus, only the period of detention following appellant's second arrest can arguably be deemed unlawful. The appellant relies upon

*Williams* v. *State*, (1976) 264 Ind. 664, 348 N.E.2d 623, in support of his position that the trial court should not have admitted his confession into evidence. In *Williams*, this court suppressed a confession which was found to be the result of an illegal detention of sixty-eight hours. However, *Williams* involved several factors which are not present in this case: an arrest without either a warrant or probable cause, deficient *Miranda* warnings and the absence of any circumstances intervening between the arrest and the confession which would have shown the statement to be a product of defendant's free will. In this case, Korn does not challenge the legality of his arrest or the sufficiency of the *Miranda* warnings he received. There is no evidence presented, beyond appellant's bare assertion, that the length of detention caused Korn's will to resist questioning to deteriorate. On the other hand, there is much evidence showing his willingness to talk and cooperate with police and to do so in the absence of an attorney. Thus, the length of detention in this case does not make appellant's confession inadmissible.

With respect to the appellant's argument that he was denied his right to counsel, there is no question that a defendant can waive his right to have an attorney present when making a statement, just as he can waive any other right. *Murphy* v. *State, supra.* However, where the assistance of counsel is waived and a statement is taken, a heavy burden rests on the state to show that such waiver was knowing and intelligent. *Miranda* v. *Arizona*, (1966) 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 724. Significantly, the record in this case shows that at no time did Korn ever state that he wanted an attorney despite the fact that he was informed of his right to counsel on at least eight separate occasions. To the contrary, Korn stated that he was leaving all decisions up to his family and was going on the advice of Mr. White. Mr. White had advised Korn to talk with police and that he, Korn, might not need a lawyer. Although Judge Jacob

arguably should have made inquiry into appellant's indigency at the preliminary hearing, *Fulks* v. *State*, (1970) 255 Ind. 81, 85, 262 N.E.2d 651, 653, such error was harmless since Korn was not, in fact, an indigent. Finally, the fact that appellant did not wish to have counsel prior to questioning is reinforced by the content of a three-way telephone conversation he had with his wife, Dorothy, and his mother, Calla Mae Bayne, immediately following the confession. This conversation was taped by police and, in relevant part, was as follows:

| "Dorothy: | Okay, your mom is on the other phone. |
| Korn: | Okay, well like I said, I've made a complete confession. |
| Calla Mae Bayne: | You what honey? |
| Korn: | I made a complete confession. After talking with this Lieutenant here for about two hours . . .. It all came back, I know what I did . . . I did do it . . . But I know what I'm doing, I think. There's been no threats, no nothing . . . I tell you what, I feel like hell, but I feel a hundred percent better now. |
| Calla Mae Bayne: | It's the best thing you could have ever done then. |
| Korn: | I think it is too. |
| Calla Mae Bayne: | Donnie are you glad, still glad we didn't get an attorney to fight it. |
| Korn: | Yes, I am." |

We find that this evidence, when viewed as a whole, was sufficient to establish a knowing and voluntary waiver by appellant of his right to counsel before questioning.

Thus, there was no error in admitting the appellant's confession into evidence.

### III.

The appellant next contends that the trial court erred in admitting into evidence the purse belonging to the victim

which appellant took from her home. Korn claims that since the purse was located as a result of his confession, it should have been excluded from evidence as the fruit of an unlawfully procured statement. In light of our holding in issue II, *supra,* that the confession was not unlawfully obtained, appellant's contention is without merit. There was no error in admitting the purse into evidence.

## IV.

The appellant's final argument concerns the trial court's denial of his Motions for Directed Verdict at the close of the state's case-in-chief and at the close of all evidence. The appellant proceeded to present evidence in defense following his first motion, and thus any error in the court's ruling on such motion is waived. *Downs* v. *State,* (1977) 267 Ind. 342, 369 N.E.2d 1079, 1081. Appellant's sole claim with regard to the denial of his Motion for Directed Verdict is that the state failed to prove that the injuries inflicted upon the victim were committed in the furtherance of a robbery. Appellant's argument is essentially an invitation for this court to reweigh the evidence. This, we will not do. Rather, we look at only the evidence most favorable to the state and the reasonable inferences to be drawn therefrom. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Mosley* v. *State,* (1977) 266 Ind. 675, 366 N.E.2d 648, 649. The evidence showed that Korn broke into the home of the victim where he slashed her throat five times. After twice raping the victim and forcing her to commit sodomy, the appellant fled from the home with her purse containing fifteen dollars. We find that this evidence satisfied our standard for reviewing sufficiency questions.

The judgment of the trial court is affirmed.

Givan, C.J., Hunter, Prentice, JJ. concur; DeBruler, J. concurs in result.

NOTE.—Reported at 379 N.E.2d 444.